## BERRY v. McCORMICK.

No. 11575—Opinion Filed July 10, 1923.

1. **Municipal Corporations — Paving Taxes —Foreclosure of Lien—Charter Powers.**

Under section 7, article 10, and section 3a, article 18, of the Constitution of Oklahoma a municipal corporation, having adopted a charter form of government, has power to levy paving taxes for local improvements, make such taxes a lien on property abutting on such improvements, and direct the enforcement thereof by an action of foreclosure in any court of competent jurisdiction, notwithstanding the provisions of sections 643 and 7396 to 7415, inclusive, of the Revised Laws of Oklahoma, 1910,

2. **Same.**

Under section 3a, article 18, of the Constitution, the inhabitants of a municipality having a population of more than 2,000 may adopt a charter prescribing the manner of assessing and collecting paving taxes, and such charter, when so adopted, so far as purely municipal matters are concerned, has force and effect equal to a general law of the Legislature and repeals all state laws in conflict therewith.

3. **Same.**

The assessment and collection of the cost for street paving properly belongs to municipal affairs and appertains to the local government of the corporation.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; Owen Owen, Judge.

Action by F. P. McCormick against J. H. Berry to foreclose paving tax lien. Judgment for plaintiff and defendant brings error. Affirmed.

J. J. Henderson, for plaintiff in error.

Randolph, Haver & Shirk, H. M. Gray, and C. E. Cooper, for defendant in error.

Opinion by FOSTER, C. This action was commenced by F. P. McCormick, defendant in error, plaintiff below, in the district court of Tulsa county, Okla., against J. H. Berry, plaintiff in error, defendant below, for the purpose of enforcing the collection of certain tax bills issued to McCormick by the city of Tulsa, and for the purpose of having a lien on certain real estate of the plaintiff in error foreclosed and the real estate ordered sold to pay the indebtedness evidenced by said tax bills.

The city of Tulsa is a municipal corporation organized and existing under a freeholders' charter adopted by the inhabitants of said city pursuant to the provisions of section 3a, article 18, of the Constitution of Oklahoma.

For convenience, the parties will be designated as they appeared in the court below.

There were seven tax bills issued to the plaintiff on June 5, 1917, which by the terms thereof, were made liens upon lots 10, 11, 12, 13, 14, 15, and 16, in block one (1), Berry addition to the city of Tulsa, to secure the payment of certain paving assessments levied by the city of Tulsa against said property. Said tax bills were made payable in ten equal installments with interest at the rate of seven per cent. per annum, and contained a provision that default in the payment of any installment the option of the holder matured all of the installments without notice, and that suit might be commenced at once to recover all of the installments. Copies of said tax bills were attached to and made a part of plaintiff's petition, and judgment for the full amount evidenced by said tax bill was de-

manded; that they be declared a lien upon the real estate of the defendant; and that the lien be foreclosed and the real estate ordered sold to pay said indebtedness.

To the petition of the plaintiff, defendant, Berry, interposed a demurrer in which he challenged the jurisdiction of the court over the subject-matter of the action and the authority of the court to hear and determine the issues in the cause. The trial court overruled the demurrer, to which the defendant excepted, elected to stand upon his demurrer and refused to further plead, whereupon the court, over the objections of the defendant, proceeded to a hearing upon the petition of the plaintiff and entered judgment as prayed for in the petition, to all of which the defendant excepted, and brings the case to this court to review the action of the trial court in overruling his demurrer.

The sole question presented for our consideration is, Did the district court of Tulsa county, Okla., have jurisdiction to entertain the action?

Counsel for defendant contends that by virtue of section 643, and sections 7396 to 7415, inclusive, Revised Laws of Oklahoma, 1910, a complete and comprehensive system is provided whereby delinquent taxes shall be collected, and that the remedy thus provided is exclusive, and that therefore the district court of Tulsa county could not entertain a petition of a tax bill holder to enforce the collection of a paving tax lien issued against property to cover the costs of the street paving adjacent thereto by foreclosure and sale of said property.

Counsel for plaintiff contend that under the authority of the cases of Nitsche v. State Security Bank, 69 Okla. 37, 170 Pac. 234, Kreager et al. v. McCormick, 74 Oklahoma, 182 Pac. 78, and Berry v. Eureka Construction Co., 76 Okla. 146, 183 Pac. 517, this question has been settled adversely to the contention of defendant, and that the same is no longer an open question in this jurisdiction.

We have examined each of the cases referred to and are unable to agree with counsel for plaintiff that the question here presented has been foreclosed by the decisions in these cases. This court is fully cognizant of the great importance of the question here raised and presented for our decision and the necessity for an authoritative pronouncement, and while we do not regard the cases above referred to as entirely controlling, this court is not without other per-

suasive adjudications on this question.

Counsel for defendant in his brief quotes extensively from the authorities to the effect that a court of equity has no jurisdiction to entertain a bill by paving tax lienholder to enforce the collection of delinquent paving taxes assessed against property by foreclosure and sale, in the absence of a statute expressly creating the right to such action. That there being no common law for levying such assessments, the method of collection must be purely statutory and the method of collection provided by the Legislature is exclusive. He then attempts to show that the Legislature has nowhere provided for collection by foreclosure and sale in the district courts; that the only authoritative remedy which has been provided by the Legislature is found in sections 643 and 7396 to 7415, inclusive, supra, of the Revised Laws of Oklahoma, 1910.

We do not regard the authorities cited by counsel for defendant as being in point for the reason that, in the instant case, a tribunal equal to and co-ordinate with the Legislature has provided a remedy for the enforcing of the collection of paving taxes through the district courts by foreclosure and sale.

Section 7, article 10, of the Constitution of Oklahoma provides as follows:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation."

Under and by virtue of section 3a, article 18, of the Constitution, the people of the state of Oklahoma, in the exercise of their sovereign power and by means of their organic law, have delegated to the inhabitants of cities having a population of more than 2,000 the power, to be exercised by such inhabitants at their option, to frame a charter for their own local government, which is to become the organic law of such municipality, and to supersede the laws of the state in conflict therewith, in so far only as they attempt to regulate municipal affairs. See Lackey v. State, 29 Okla. 255, 116 Pac. 913.

It will thus be seen that the people of the state of Oklahoma, in the Constitution, delegated not only to the Legislature, but to the inhabitants of cities having a population of more than 2,000, framing a charter of their own, under section 3a, article 18, of the Constitution, the power to levy and collect taxes. The inhabitants of the city of Tulsa, when they adopted their home-rule charter, pro--

vided in a manner as authoritative as the Legislature could have done. the method of levying and collecting paving taxes for local improvements, the only restriction upon the power thus delegated to them being that it must be exercised in a matter purely municipal. Article 8, section 13, of the charter of Tulsa provides, in part, as follows:

"And if the property subject to such assessment be sold by the county treasurer, the certificate or deed therefor shall be executed by such officer as is or may hereafter be provided by law for the sale of property for ad valorem taxes and such lien may also be enforced by suit in any court of competent jurisdiction. * * *"

The principle underlying home-rule government in municipalities in Oklahoma, under section 3a, article 18, of the Constitution, supra, is that, as to purely municipal matters, the power of the people is co-ordinate with the power of the Legislature itself, and when the inhabitants of such municipality avail themselves of constitutional home-rule guarantees, provided for under section 3a of our organic act, and adopt a charter in which the manner of assessing and collecting paving taxes is prescribed, such charter, so far as purely municipal matters are concerned, has equal force and effect as a general law of the Legislature, and repeals all state laws in conflict therewith. Owen et al. v. City of Tulsa et al., 27 Okla. 264, 111 Pac. 320; Lackey v. State, 29 Okla. 255, 116 Pac. 913; Mitchell v. Carter, 31 Okla. 592, 122 Pac. 691.

That charter provisions, relating to street improvement and adopted by the authority of constitutional home-rule provisions, may create tax liens and provide for their enforcement through an action of foreclosure in a state court of general jurisdiction, is generally sustained by the authorities. See State v. District Court, 87 Minn. 146, 91 N. W. 300; Kansas City v. Ward et al., 134 Mo. 172, 35 S. W. 600; and Grimes v. City of Seaside et al., 87 Ore. 256, 170 Pac. 310

In State ex rel. v. District Court, supra, the Supreme Court of Minnesota, speaking of the right of the district court to entertain a condemnation proceeding under a provision of the freeholders charter of St. Paul, used this language:

"It is still urged that the charter commission could not—as it undoubtedly attempted to do—confer jurisdiction on the district courts of the state to hear the questions involved in the condemnation of property for public use, nor prescribe the methods by which such issues should be determined. We need not take time to cite the various provisions of the citizens' charter itself rel-

ative to the judicial procedure provided for in such cases. It is sufficient to say that it prescribed an efficient legal practice by which the rights of the land owners are fully protected. An opportunity for hearing is given, with judgment to be rendered after hearing, this embracing all the essential elements of due process of law as defined by the highest authority (Dartmouth College v. Woodward, 4 L. Ed. 629), and had the same practice been prescribed by the Legislature no question could have been raised as to the right of the courts to give appropriate judicial assistance in aiding the results to be secured. (McGee v. Commissioners, 84 Minn. 472, 88 N. W. 6.)

"That the new charter of St. Paul prescribed a course of practice in this respect, instead of the Legislature, may distinguish the procedure in which the rights of the parties are to be determined, although it created no substantial distinction, but merely a formal difference in the exercise of the implied right."

The charter of the city of Tulsa, quoted supra, provided for the enforcement of paving tax liens levied and assessed in accordance therewith in any court of competent jurisdiction, and the district court of Tulsa county, in the exercise of its general jurisdiction, had the power to entertain a proceeding for such purpose. The right to the remedy was given by the charter and the power to entertain it by the general laws under which the court acts. Taking all of the pertinent provisions of the law on the subject and construing them together, we think the jurisdiction of the court firmly established.

It is next insisted that street improvement is not, strictly speaking, a municipal affair; that the streets and highways belong to the public, and that the state has a sovereign interest in them, and that therefore the levy and collection of paving taxes should be governed by the general laws of the state and not by the charter provisions of the city of Tulsa.

In the case of Murnane v. City of St. Louis et al., 123 Mo. 479, 27 S. W. 711, the Supreme Court of Missouri held as follows:

"The assessment and collection of the cost for street improvements properly belong to municipal affairs and appertains to the local government of the corporation."

That street paving is a municipal affair is sustained by the decisions of the courts of many states having constitutional home-rule provisions. Board of Commissioners et al. v. City of Colorado Springs, 66 Colo. 111, 180 Pac. 301; Turner v. Snyder et al., 101 Minn. 481, 112 N. W. 868; City of Collins-

ville et al. v. Ward et al., 64 Okla. 30, 165 Pac. 1145.

We are therefore of the opinion that the trial court committed no error in overruling the demurrer of the defendant to the petition of the plaintiff, and the judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.